## Hast, et al. v. Wilder's Trustee, et al.

(Decided November 25, 1910.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Estates—Settlement—Improvements by Trustee—Effort to Set Aside Certain Expenditures—Knowledge of Parties.—In the matter of the settlement of the estate of J. B. Wilder, deceased, who had but two children, both of whom were dead, each leaving children surviving, where it was sought to set aside certain expenditures made by the trustee in the improvement of the real estate, belonging to the estate. Held, it may be conceded and we hold that it was not proper to make permanent improvements or additions to the capital of the estate at the expense of the income, such as the addition of a story to a house, or building a house on an unimproved lot, but when such work has been done and the expense incurred the parties now complaining who were then sui juris, and were parties to the action and represented by skilled counsel, there is every reason for treating each settlement made by the trustee when approved and confirmed by the court as final concerning the matters disposed of by it, and the court should refuse to open up these settlements on the grounds, if no other, that the complainants have not been deligent in pressing their demands.

2. Tardy Claimants—Changed Views.—Equity will not   aid   such tardy claimants, nor encourage such speculation. They will not be heard to say that it was all right then, when, so far as appears, they desired that course to be pursued, and years afterwards say it is not all right now, and have the whole matter opened up and recast, to suit their changed views.

3. Estates—Payment of Taxes, &c., Out of Income of Estate.—Appellants want the insurance and taxes prorated between capital and income, or, as they express it, between the life tenant and remainderman. Whatever may be the rule on that subject in the absence of express direction in the   will   or   instrument creating the estate, it is noted in this instance the will expressly requires the estate to be kept intact, devises it to a trustee whom it charges to pay out of the income, taxes, assessments, insurance, repairs and expenses. The net income only is given to the grandchildren. The testator had the right to charge his estate with these items and did so. Therefore, it is proper to pay them out of income, and this includes assessments for street

improvements, counsel fees, commissioner's fees, abstractors and the like, were also paid, and other items charged to income, which was right. They are expenses incurred in the management of the trust. The testator directed them to be paid out of income.

HELM BRUCE and WILLIAM MARSHALL BULLITT, for Appellant.

W. O. HARRIS, for Appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

James B. Wilder, deceased, disposed of a large estate by his will. After certain specific bequests not here involved, the residue of his estate was devised to his daughter-in-law, Edith V. Wilder in trust. Of the latter, it was provided in the seventh clause of the will:

"Out of the net profits of said estate, after paying taxes, assessments, insurance, repairs and other necessary expenses, there shall be paid annually said annuity to Edith V. Wilder, and if enough remains for the purpose, to each of said grandchildren who are then twenty-one years of age and to the guardians and trustees of such as are under age, the sum of $1,000.00, to be used for their support and the support and education of those under age. If in any year such net profits are not enough for the purpose aforesaid, the annuity to such —except Edith V. Wilder—shall be scaled pro rata after such payments, so long as it may be required for the purpose. The surplus of such net profits, after the payments aforesaid, shall be set apart and used as soon as enough is accumulated for that purpose, for reconstructing the two houses situated on the north side of Main Street, between Fifth and Sixth Streets, Louisville, Ky., one conveyed to me by Dr. Hewitt, of Memphis, Tenn., and the other bought by Oscar Wilder, deceased, and myself of the Northern Bank of Kentucky, which I got in the division between Oscar Wilder's heirs and myself, and such surplus shall be so used as soon as said houses are completed and paid for. Then and thereafter the whole of said net profits of said estate as aforesaid, shall, after paying taxes, assessments, insurance, etc., and my said daughter-in-law her said annuity, be equally divided among all my grandchildren, the shares of those under age going to their respective guardians and trustees, and the shares of such as then may be dead,

going to their decedents, if any, or if any be dead at the date of such division of income without leaving lawful issue, the same shall go to the surviving brothers and sisters, which disposition of said net profits shall continue until the time fixed for final distribution herein."

He had bequeathed an annuity of $2,000 to Edith V. Wilder. He had had but two children. They were both dead when the will was drawn. Each had left children surviving. These are beneficiaries under the trust clause of the will. The period of distribution provided was twenty-one years after the death of the last surviving grandchild. The appellants are two of the grandchildren named in the will. They have no children, and they deem it likely that they will not have. The income from the trust estate is some forty-odd thousand dollars annually. The principal of the estate is valued at probably exceeding $500,000.00. As it seems unlikely that appellants will have issue to enjoy the principal when the period of distribution arrives, they are mainly concerned in the application of the income. The estate comprises in large part certain business houses in the city of Louisville. One of these was destroyed by fire in 1892. $15,174.95 insurance was collected on it. The trustee decided to rebuild, and did rebuild at a cost of $22,000.00. The new building was five stories; the old was four. The difference in the cost between $22,000.00 and the insurance collected was paid out of the income of the estate.

Another building, at Fifth and Main, was improved so as to be occupied by the First National Bank. The improvements consisted of mahogany bank fixtures, and the like, which cost $5,000.00, and were paid for out of the rents of the building, a little at a time. The lessee paid for the improvements, and repaid itself by reserving $125.00 every three months until the whole was repaid.

Another building was on Main Street, and leased to J. M. Robinson & Co. An elevator was put in the building at a cost of $2,210.79, and after it had worn out a new elevator was put in at a cost of $4,500.

Certain unimproved lands in Kansas realized a rental of only $1,000.00, but cost the estate in taxes over $9,000.00.

A suit was filed in the Jefferson Circuit Court in 1888 by the trustee for advice touching the management of the estate in execution of the trust, and for periodical set-

tlement of the trustee's accounts. The matters above referred to were submitted to the chancellor in advance (except the payment of the Kansas taxes) for his advice and direction; and all the matters and other items of account, showing item by item all the receipts and disbursements by the trustee, passed into settlements had before the master commissioner at intervals, and after having laid over for exceptions, and none being taken, were by judgments of the court approved and confirmed. The settlements were had March 11, 1891, Nov. 22, 1891, July 20, 1894, July 6, 1896, July 9, 1898, Nov. 27, 1903, March 26, 1904, June 8, 1904, and January 15, 1906.

Another settlement was filed June 29, 1907, to which exceptions were taken by appellants, and which they sought to have reformed so as to correct certain errors complained of as having entered into some of the former settlements which were prejudicial to appellant's rights.

It may be conceded, and we hold, that it was not proper to make permanent improvements or additions to the capital of the estate at the expense of the income, such as the adding of a story to a house, or building a house on an unimproved lot. What then is the effect of the judgment approving the settlements which so directed or allowed? The parties here complaining were then sui juris, were parties to the action, and were represented by skilled counsel. The record shows that their attention, or that of their counsel, was drawn to the settlements and judgments as they were entered, and in several instances were expressly assented to. The judgments appear to have been intended by the court, and at the time and until the present treated by the parties as final orders. The nature of each settlement was a closing of the matter so far as it purported to close it. There is nothing to indicate that the parties or the court reserved any control over the settlements, or contemplated that ever again they should be opened up for further hearing and adjudication. There is every reason for treating each settlement when approved and confirmed by the judgment of the court, as final concerning the matters disposed of by it.

Furthermore, after all the years of quiescence, the court should refuse to open up these settlements, upon the ground, if no other, that the complainants have not been diligent in pressing their demands. It may be true that the errors could be now corrected without disturbing any rights which grew out of the various judgments

alone; that the rights of the trustee would not be affected; that this is altogether a matter between the distributees. But it may also be true that an entirely different course in the management and investment of this estate might have been employed if the appellants had then objected to the improvements being made as was done, whereby certain properties, of growing value and paying larger dividends than are usually obtainable now, would have been sold, must have been, to make the improvements, or other real estate must have been sold for that purpose. Then it was not so apparent as it may now be that the interests of these appellants was to gather in their hands the whole of their income, and not to enhance the capital fund. From these conditions, appellants have enjoyed whatever advantages that have accrued from preserving the high interest-bearing securities, and the enhanced rents from the improved buildings. Conditions have changed since then, so that appellants see what they may not have seen or desired when the settlements were had, or the investments were being made. Equity will not aid such tardy complainants, nor encourage such speculation. They will not be heard to say that it was all right then, when so far as appears they desired that course to be pursued, and years afterwards say it is not all right now, and have the whole matter opened up and recast to suit their changed views.

Among the properties of the estate are two large valuable store buildings—one occupied for many years by Baird & Son, and the other formerly occupied by Stucky, Quest & Co. The latter were quitting as tenants. Baird & Son proposed to lease that building also, provided certain arch-ways were cut between the two so as to make them practically one building. That was done at a cost of $1,483.42. Appellants contend that this cost should be borne by capital. We think not. It was more in the nature of repairs, and is, furthermore, more than compensated for by the increased rental yielded because of it.

Appellants want the insurance and taxes pro rated between capital and income, or as they express it, between the life tenants and remaindermen. Whatever may be the rule on that subject in the absence of express direction in the will or instrument creating the estates, or the trust, in this instance it is noted the will expressly requires the estate to be kept intact; devises it to a

trustee, whom it charges to pay out of the income taxes, assessments, insurance, repairs and expenses. The net income only is given to the grandchildren. The testator, of course. had the right to charge his estate with these items. He did so. Therefore, it is proper to pay them out of the income. This includes assessments for street improvements.

Counsel fees, commissioner's fees, abstractors, and the like, were also paid and other items charged to the income, which was right. They are expenses incurred in the management of the trust. The testator directed them to be paid out of the income.

The judgment being in conformity to these views, it is affirmed.